

**SO ORDERED,**

*[signature]*

**Judge Neil P. Olack**
United States Bankruptcy Judge
Date Signed: June 1, 2016

The Order of the Court is set forth below. The docket reflects the date entered.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:     **SANDERS COMMERCIAL PROPERTIES, LLC**     **CHAPTER 11**
             **Debtor.**     **CASE NO. 15-01560-NPO**

### ORDER GRANTING MOTION FOR APPROVAL OF COMPROMISE
### AND SETTLEMENT WITH TRUSTMARK NATIONAL BANK
### UNDER BANKRUPTCY RULE 9019
### [DK #143]

THIS CAUSE having come on for consideration on the *Motion for Approval of Compromise and Settlement With Trustmark National Bank Under Bankruptcy Rule 9019* [DK #143] (the "Motion") filed herein by Sanders Commercial Properties, LLC (the "Debtor" or "SCP"), and the Court being advised that there are no objections to the Motion and being otherwise fully advised in the premises, and notice of the Motion being appropriate under the circumstances, finds that the parties agree as follows:

1.     The Debtor initiated this Chapter 11 case by the filing of a Voluntary Petition on May 13, 2015. The Debtor is in possession and control of its assets as the debtor-in-possession.

2.     R. David Sanders ("Sanders") initiated a Chapter 11 case by the filing of a Voluntary Petition on July 28, 2014. (together with Sanders's bankruptcy case, the "Bankruptcy Cases"). Sanders owns the Debtor.

3.     This Honorable Court has jurisdiction of the subject matter herein and the parties

hereto pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105, 363, 541, 1107, related statutes, related rules and various orders of reference. This is a core proceeding.

4. Trustmark National Bank ("Trustmark") is the largest creditor in the Bankruptcy Cases. As of January 7, 2016, the Debtor and Sanders were indebted to Trustmark in the aggregate amount of at least $3,167,587.98, including accrued interest, costs, and attorneys' fees, on seven loans:

| Loan No. | Borrower | Principal | Interest | Other Charges | Total |
|---|---|---|---|---|---|
| 29272 | David Sanders | $194,368.28 | $17,944.34 | $1,025.75 | $213,338.37 |
| 94980 | David Sanders | $0.00 | $0.00 | $0.00 | $0.00 |
| 20414 | SCP | $283,454.97 | $992.09 | $3,000.00 | $287,447.06 |
| 42244 | SCP | $189,136.55 | $661.98 | $0.00 | $189,798.53 |
| 51746 | SCP | $541,026.72 | $1,893.60 | $0.00 | $542,920.32 |
| 87532 | Sandmark Bay | $898,920.29 | $405,104.41 | $208,437.31 | $1,512,462.01 |
| 24929 | Sandmark Bay | $392,648.75 | $28,180.15 | $792.79 | $421,621.69 |
| | TOTAL | $2,499,555.56 | $454,776.57 | $213,255.85 | **$3,167,587.98** |

5. Trustmark's loan to Sanders (Loan No. 29272), as well as all other debt Sanders owes to Trustmark, is secured by a valid, perfected, enforceable first-priority continuing lien on and security interest in 67 acres and a cabin in Hinds County, Mississippi (collectively, the "Cabin").

6. Trustmark's three loans to the Debtor (Loan Nos. 20414, 42244, 51746) are secured by valid, perfected, enforceable first-priority continuing liens on and security interests in (i) the real property described as Lot 121 Mirror Lake Subdivision, Rankin County, Mississippi ("Court House Place"), and all leases, rents, and profits from Court House Place; and (ii) the real property described as Part of Lot 7 Richland Marketplace S/D City of Richland, Rankin County, Mississippi (the "Shops of Richland," and together with the Cabin and Court House Place, collectively, the "Properties" and each a "Property"), and all leases, rents, and profits from the

Shops of Richland.

7. Trustmark's two loans to Sandmark Bay, LLC ("Sandmark Bay") (Loan Nos. 87532, 24929) are secured by valid, perfected, enforceable second-priority continuing liens on and security interests in (i) Court House Place and (ii) the Shops of Richland.

8. Sanders holds ownership interests in the Debtor and Sandmark Bay and personally and unconditionally guaranteed payment of all of the Debtor's and Sandmark Bay's indebtedness to Trustmark.

9. On August 17, 2015, this Court entered an *Agreed Order on Trustmark National Bank's Motion to Terminate the Automatic Stay and Abandon Property of the Estate, or Alternatively for Adequate Protection* [DK. #61] (the "Agreed Order") in this case, providing, among other things, that the Debtor must make monthly cash payments to Trustmark in the amount of $17,000.00 and must maintain adequate insurance on Court House Place and the Shops of Richland and must pay when due all taxes levied against Court House Place and the Shops of Richland.

10. In accordance with the Agreed Order, on March 31, 2016, counsel for Trustmark sent to counsel for the Debtor written notice advising that the Debtor had defaulted on its obligations under the Agreed Order for failing to pay when due the ad valorem taxes levied against Court House Place and the Shops of Richland, and advising that the automatic stay would terminate and Court House Place and the Shops of Richland would be abandoned from the Debtor's bankruptcy estate and Trustmark would be authorized to foreclose on Court House Place and the Shops of Richland if the default was not cured within 10 days from the date of the written notice.

11. To avoid further costs and expenses, the Debtor and Trustmark have agreed to

settle their differences as set forth in the Settlement Agreement and Release (the "Agreement") attached hereto as Exhibit "A" and incorporated herein by reference. The general terms and conditions of the Agreement were read into the record at the April 12, 2016 hearing on confirmation of Sanders's *First Amended Plan of Reorganization* [Sanders DK #204].

12. The compromise and settlement as reflected in the Agreement is fair, reasonable, appropriate, and in the best interests of the estate and therefore should be approved.

IT IS, ACCORDINGLY, ORDERED AND ADJUDGED:

A. The Motion is granted.

B. The Debtor's compromise and settlement with Trustmark is approved. The terms and conditions of the Agreement are approved in all respects. The Debtor is authorized to execute the Agreement and perform all obligations thereunder.

C. This is a final judgment as contemplated by the applicable bankruptcy rules.

##END OF ORDER##

AGREED TO AND APPROVED FOR ENTRY BY:

/s/ Marcus M. Wilson
Marcus M. Wilson (Miss. Bar #7308)
Andrew R. Wilson (Miss. Bar #102862)
BENNETT LOTTERHOS SULSER & WILSON, P.A.
190 East Capitol Street
Suite 650
Jackson, Mississippi 39201
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com
awilson@blswlaw.com

*Attorneys for Trustmark National Bank*

Submitted by:

Craig M. Geno; MSB No. 4793
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 – Telephone
601-427-0050 – Facsimile
cmgeno@cmgenolaw.com

# Exhibit A

## Settlement Agreement and Release

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is entered into effective as of _____, 2016, by and between R. DAVID SANDERS ("Sanders"), an individual with a mailing address of P.O. Box 76, Jackson, Mississippi 39205-0076; SANDERS COMMERCIAL PROPERTIES, LLC ("SCP"), a Mississippi limited liability company with a mailing address of P.O. Box 76, Jackson, Mississippi 39205-0076; and TRUSTMARK NATIONAL BANK ("Trustmark"), a national banking institution with a mailing address of c/o Bennett, Lotterhos, Sulser & Wilson, P.A., Attn: Marcus M. Wilson and Andrew R. Wilson, P.O. Box 98, Jackson, Mississippi 39205-0098. Sanders, SCP, and Trustmark are collectively referred to herein as the "Parties," and each a "Party."

## BACKGROUND

A. On July 18, 2014, Sanders filed for chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court"), Case No. 14-02271-NPO, and on May 13, 2015, SCP filed for chapter 11 bankruptcy protection in the Bankruptcy Court, Case No. 15-01560-NPO (together with Sanders's bankruptcy case, the "Bankruptcy Cases").

B. Trustmark is the largest creditor in the Bankruptcy Cases. As of January 7, 2016, Sanders and SCP were indebted to Trustmark in the aggregate amount of at least $3,167,587.98, including accrued interest, costs, and attorneys' fees, on the following seven loans:

| Loan No. | Borrower | Principal | Interest | Other Charges | Total |
|---|---|---|---|---|---|
| 29272 | David Sanders | $194,368.28 | $17,944.34 | $1,025.75 | $213,338.37 |
| 94980 | David Sanders | $0.00 | $0.00 | $0.00 | $0.00 |
| 20414 | SCP | $283,454.97 | $992.09 | $3,000.00 | $287,447.06 |
| 42244 | SCP | $189,136.55 | $661.98 | $0.00 | $189,798.53 |
| 51746 | SCP | $541,026.72 | $1,893.60 | $0.00 | $542,920.32 |
| 87532 | Sandmark Bay | $898,920.29 | $405,104.41 | $208,437.31 | $1,512,462.01 |
| 24929 | Sandmark Bay | $392,648.75 | $28,180.15 | $792.79 | $421,621.69 |
| TOTAL | | $2,499,555.56 | $454,776.57 | $213,255.85 | $3,167,587.98[1] |

C. Trustmark's loan to Sanders (Loan No. 29272), as well as all other debt Sanders owes to Trustmark, is secured by a valid, perfected, enforceable first-priority continuing lien on and security interest in 67 acres and a cabin in Hinds County, Mississippi (collectively, the "Cabin"), as more particularly described on Exhibit A attached hereto.

D. Trustmark's three loans to SCP (Loan Nos. 20414, 42244, 51746) are secured by valid, per-

---

[1] Sanders also is personally indebted to Trustmark for at least $9,370.63 on a credit card.

Settlement Agreement and Release
Page 1 of 6

fected, enforceable first-priority continuing liens on and security interests in (i) the real property described as Lot 121 Mirror Lake Subdivision, Rankin County, Mississippi ("Court House Place"), as more particularly described on Exhibit B attached hereto, and all leases, rents, and profits from Court House Place; and (ii) the real property described as Part of Lot 7 Richland Marketplace S/D City of Richland, Rankin County, Mississippi (the "Shops of Richland," and together with the Cabin and Court House Place, collectively, the "Properties" and each a "Property"), as more particularly described on Exhibit C attached hereto, and all leases, rents, and profits from the Shops of Richland.

E. Trustmark's two loans to Sandmark Bay, LLC ("Sandmark Bay") (Loan Nos. 87532, 24929) are secured by valid, perfected, enforceable second-priority continuing liens on and security interests in (i) Court House Place and (ii) the Shops of Richland.

F. Sanders holds ownership interests in SCP and Sandmark Bay and personally and unconditionally guaranteed payment of all of SCP's and Sandmark Bay's indebtedness to Trustmark.

G. On August 17, 2015, the Bankruptcy Court entered an Agreed Order on Trustmark National Bank's Motion to Terminate the Automatic Stay and Abandon Property of the Estate, or Alternatively for Adequate Protection (Dkt. #61) (the "Agreed Order") in SCP's bankruptcy case providing, among other things, that SCP must make monthly cash payments to Trustmark in the amount of $17,000.00 and must maintain adequate insurance on Court House Place and the Shops of Richland and must pay when due all taxes levied against Court House Place and the Shops of Richland.

H. In accordance with the Agreed Order, on March 31, 2016, counsel for Trustmark sent to counsel for SCP written notice advising that SCP had defaulted on its obligations under the Agreed Order for failing to pay when due the ad valorem taxes levied against Court House Place and the Shops of Richland, and advising that the automatic stay would terminate and Court House Place and the Shops of Richland would be abandoned from SCP's bankruptcy estate and Trustmark would be authorized to foreclose on Court House Place and the Shops of Richland if the default was not cured within 10 days from the date of the written notice.

I. The Parties subsequently agreed to settle their differences as set forth in this Agreement in order to avoid further costs and expenses.

J. The general terms and conditions of this Agreement were recorded on the record at the April 12, 2016 hearing on confirmation of Sanders's First Amended Plan of Reorganization.

K. Sanders and SCP, in their business judgment, believe that this Agreement is in the best interests of the estates and all creditors and parties in interest in the Bankruptcy Cases.

## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, and intending to be legally

bound hereby, the Parties hereby agree as follows:

1. **Sale of the Properties.** Sanders or a real-estate broker approved by the Bankruptcy Court shall have until **July 1, 2016** (the "Contract Deadline"), to secure bona-fide written contracts for the sale of the Properties, with closing dates no later than **September 1, 2016** (the "Closing Deadline"). If Sanders or a broker fails to secure a bona-fide written contract for the sale of any Property on or before the Contract Deadline, the automatic stay or other injunction with respect to such Property shall terminate, and Trustmark shall be authorized to foreclose on the Property in accordance with applicable nonbankruptcy law without further notice, hearing, or Bankruptcy Court order. Likewise, if the sale of any Property does not close on or before the Closing Deadline, the automatic stay or other injunction with respect to such Property shall terminate, and Trustmark shall be authorized to foreclose on the Property in accordance with applicable nonbankruptcy law without further notice, hearing, or Bankruptcy Court order. Trustmark shall have the right to obtain an updated appraisal of any Property before agreeing to consent to any sale of the Property free and clear of Trustmark's lien. Upon request, Trustmark will furnish to Sanders any such updated appraisals that are deemed acceptable to and are approved by Trustmark's appraisal review department.

2. **Conversion of Bankruptcy Cases.** In addition to the events resulting in the termination of the automatic stay discussed in paragraph 1 above, if either of the Bankruptcy Cases is converted to a chapter 7 liquidation case, either voluntarily or involuntarily, including but not limited to any conversion by reason of Sanders's violation of the Order on Objection to Confirmation of First Amended Plan of Reorganization (Dkt. #255) entered in his case on April 12, 2016, the automatic stay or other injunction with respect to the Properties shall terminate upon entry of the order of conversion, and Trustmark shall be authorized to foreclose on the Properties in accordance with applicable nonbankruptcy law without further notice, hearing, or Bankruptcy Court order, regardless of whether the Contract Deadline or the Closing Deadline has passed.

3. **Sale Hearing & Credit Bidding.** Pursuant to § 363 of the Bankruptcy Code, before closing the sale of all or any one of the Properties, Sanders and SCP must first obtain Bankruptcy Court approval of the sale, after notice and a hearing. Notwithstanding anything contained herein to the contrary, pursuant to § 363(k) of the Bankruptcy Code, Trustmark shall be authorized to credit bid all or any portion of its indebtedness, including but not limited to the Sandmark Bay indebtedness, at any such sale hearing(s) or auction(s), with such credit bid being deemed a qualified bid and treated as the equivalent of a cash bid. In addition, if Trustmark is the successful purchaser of all or any one of the Properties via credit bidding, Trustmark shall not pay any brokerage fees or commissions.

4. **Deficiency.** Trustmark shall have an allowed general unsecured claim in the Bankruptcy Cases for any deficiency remaining following the disposition of the Properties, whether by foreclosure or otherwise, as well as an allowed general unsecured claim in Sanders's bankruptcy case for his credit-card debt.

5. **Taxes.** Sanders and SCP shall be solely responsible for payment of any and all taxes (including

penalties and interest related thereto) owed to any taxing authority as a result of the disposition of the Properties or the terms and conditions of this Agreement, and shall indemnify and hold Trustmark harmless if any taxing authority asserts against Trustmark any claim for unpaid taxes, failure to withhold taxes, penalties, or interest based on the disposition of the Properties or the terms and conditions of this Agreement.

6. **Release.** Sanders and SCP, and on behalf of any and all of their predecessors, successors, heirs, trustees, representatives, and assigns, and on behalf of any other persons or entities that may claim under or through them, or that may otherwise assert claims for them or on their behalf (collectively, the "Releasing Parties") hereby irrevocably and unconditionally release, acquit, and forever discharge Trustmark and each of its past, present, and future employees, shareholders, equity interest holders, officers, directors, members, managers, partners, agents, brokers, contractors, retailers, distributors, merchants, wholesalers, affiliates, subsidiaries, parent companies, departments, divisions, representatives, servants, attorneys, insurers, subrogees, joint venturers, predecessors, successors, assignors, assignees, and any and all related companies whatsoever and wherever located (collectively, the "Released Parties"), and each of them, jointly and severally, from any and all claims, counterclaims, cross-claims, causes of action, remedies, damages, liabilities, debts, suits, demands, actions, costs, expenses, fees, controversies, set-offs, third-party actions or proceedings of whatever kind or nature, whether at law, equity, administrative, arbitration, or otherwise, whether known or unknown, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, which any or all of the Releasing Parties may now have, or have ever had, or may hereafter have, against any or all of the Released Parties, regardless of whether on account of, arising out of, relating to, resulting from, or in any way connected with (i) the Bankruptcy Cases; (ii) Sanders Loan No. 29272; (iii) SCP Loan Nos. 20414, 42244, 51746; (iv) Sandmark Bay Loan Nos. 87532, 24929; (v) Sanders's guaranties of the SCP and Sandmark Bay loans; or (vi) any facts, circumstances, or situations existing before the date of this Agreement. Nothing contained herein releases or discharges any claims or actions the Releasing Parties may have against Dr. George M. Sturgis.

7. **Agreed Order.** This Agreement shall not alter or affect in any way the terms or conditions of the Agreed Order, all of which shall remain in full force and affect. Nothing contained in this Agreement is intended to create or constitute a waiver, modification, relinquishment, or forbearance by Trustmark of any breach, default, or event of default, whether now existing or hereafter arising, or of any of Trustmark's rights or remedies under the Agreed Order. SCP understands and agrees that it shall maintain adequate insurance on the Properties and continue making monthly adequate-protection payments to Trustmark in the amount of $17,000.00, and otherwise abide by the terms and conditions of the Agreed Order, until Court House Place and the Shops of Richland are sold or foreclosed upon.

8. **No Action.** Trustmark shall not seek a conversion or dismissal of the Bankruptcy Cases until at least **January 1, 2017**.

9. **Extension of Deadlines.** The deadlines contained herein may be extended upon Trustmark's express written consent.

10. **Bankruptcy Court Filings.** Sanders and SCP shall file with the Bankruptcy Court motions for entry of final orders authorizing and approving this Agreement under applicable bankruptcy law on or before **April 30, 2016.**

11. **Bankruptcy Court Approval.** The effectiveness of this Agreement is conditioned upon entry of final, non-appealable orders by the Bankruptcy Court in the Bankruptcy Cases authorizing and approving this Agreement.

12. **Acknowledgment of Recitals.** The Parties acknowledge and agree that the background section of this Agreement contains true and correct statements of fact.

13. **Reliance on Own Counsel.** In entering this Agreement, the Parties acknowledge that they have relied on the legal advice of their respective attorneys, who are the attorneys of their own choosing, that the terms of this Agreement are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties also acknowledge that, in executing this Agreement, they did not rely, and have not relied, on any representation or statement made by the other Party or the other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

14. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, representations, promises, and undertakings.

15. **Amendments.** This Agreement may not be amended except by a writing signed by each of the Parties and approved by the Bankruptcy Court.

16. **Further Assurances.** The Parties agree to promptly perform such acts and to prepare, execute, and file all documents and papers reasonably required to perform the covenants and satisfy the conditions contained in this Agreement, or to give full force and effect to this Agreement.

17. **No Drafting Presumption.** This Agreement shall not be construed more strictly against one Party than another, as the Parties acknowledge and agree that each Party has contributed substantially and materially to the preparation of this Agreement and has had a full and fair opportunity to review this Agreement with attorneys of their own choosing.

18. **Headings.** The headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

19. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the state of Mississippi without regard to its choice-of-law rules.

20. **Agreement is Legally Binding.** The Parties intend this Agreement to be legally binding on

and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, trustees, and estates, and on behalf of any other persons or entities that may claim under or through them, or which may otherwise assert claims for them or on their behalf.

21. **Counterparts.** This Agreement may be executed in any number of counterparts, each one of which shall be considered an original, but all of which constitute one and the same instrument.

    IN WITNESS WHEREOF, and intending to be legally bound, each of the Parties hereto has caused this Agreement to be duly executed as of the date set forth hereinabove.

    R. DAVID SANDERS

    _____

    SANDERS COMMERCIAL PROPERTIES, LLC, a Mississippi limited liability company

By:_____
    Name: R. David Sanders
    Title: Member/Manager

    TRUSTMARK NATIONAL BANK, a national banking institution

By:_____
    Name: Martin Francis
    Title: First Vice President

# Exhibit A

## (Legal Description of the Cabin)

BOOK 516 PAGE 233

## EXHIBIT "A"

A parcel of land containing 87.6 acres, more or less, located on the West side of the East Half of Section 29, T3N, R3W, in the Second Judicial District of Hinds County, Mississippi, being more particularly described to-wit:

Commence at an axle in the Northwest Corner of the East half of Section 29, T3N, R3W, in the Second Judicial District of Hinds County, Mississippi; run thence South 69.2 feet to a painted corner and set iron pin being the point of beginning of this parcel; thence continuing South along a fence line a distance of 3988.1 feet to the North right of way line of State Highway No. 27; run thence along said North right of way line S 50 degrees 27 minutes 00 seconds E a distance of 568.93 feet to the center of a large drainage ditch (creek); thence meander Northeasterly along the center of said ditch the following bearings and distances: N 42 degrees 54 minutes 00 seconds E a distance of 170.26 feet; thence N 26 degrees 12 minutes 00 seconds E a distance of 157.38 feet; thence N 32 degrees 13 minutes 00 seconds E a distance of 216.07 feet; thence N 45 degrees 28 minutes 00 seconds E a distance of 123.32 feet; thence N 33 degrees 35 minutes 00 seconds E a distance of 169.38 feet; thence N 34 degrees 46 minutes 00 seconds E a distance of 175.37 feet; thence N 32 degrees 44 minutes 00 seconds E a distance of 155.14 feet; thence N 26 degrees 42 minutes 00 seconds E a distance of 80.15 feet; thence N 23 degrees 23 minutes 00 seconds E a distance of 79.86 feet; thence N 19 degrees 47 minutes 10 seconds E a distance of 79.60 feet; thence meander Northwesterly along the center of creek the following general bearings and distances: N 28 degrees 47 minutes 00 seconds W a distance of 267.4 feet; thence N 12 degrees 58 minutes 10 seconds W a distance of 237.9 feet; thence N 33 degrees 18 minutes 20 seconds W a distance of 308.3 feet; thence N 31 degrees 08 minutes 10 seconds W a distance of 270.4 feet; thence N 1 degree 46 minutes 20 seconds E a distance of 77.7 feet; thence N 18 degrees 48 minutes 10 seconds W a distance of 125.4 feet; thence North 56 degrees 28 minutes 20 seconds W a distance of 169.2 feet; thence N 78 degrees 52 minutes 00 seconds W a distance of 91.7 feet; thence N 15 degrees 51 minutes 30 seconds W a distance of 272.8 feet; thence N 7 degrees 50 minutes 00 seconds W a distance of 383.0 feet; thence N 29 degrees 34 minutes 20 seconds E a distance of 472.3 feet; thence N 12 degrees 54 minutes 40 seconds E a distance of 307.9 feet; thence N 8 degrees 31 minutes 40 seconds W a distance of 171.2 feet; thence N 30 degrees 39 minutes 00 seconds W a distance of 232.1 feet; thence N 0 degrees 27 minutes 40 seconds E a distance of 230.0 feet; thence leaving said creek, run N 89 degrees 05 minutes 30 seconds W a distance of 92.05 feet; thence S 84 degrees 34 minutes 40 seconds W a distance of 383.14 feet back to the point of beginning; said described tract containing 87.6 acres, more or less.

A survey plat of the above described property, dated January 27, 1996, prepared by Albert G. Calloway, on which the above described property is designated as Parcel 1, is attached to that certain Warranty Deed recorded in Book 429 at Page 440.

SIGNED FOR IDENTIFICATION PURPOSES THIS THE 8TH DAY OF OCTOBER, 2004.

*R. David Sanders* (signature)
R. DAVID SANDERS

STATE OF MS
COUNTY OF HINDS
FILED - RECORDED
2ND DISTRICT

2004 OCT -8 AM 11:06

BOOK 516
PAGE 229
EDDIE JEAN CARR
CHANCERY CLERK

1368
16.00

# Exhibit B

## (Legal Description of Court House Place)

Lot 121, Mirror Lake Subdivision a subdivision according to a map or plat thereof which is on file of record in the office of the Chancery Clerk of Rankin County at Brandon, Mississippi, in Plat Cabinet B at Slot 255, reference to which is hereby made in aid of and as a part of this description.

The Real Property or its address is commonly known as 2655 Lakeland Dr., Flowood, MS 39232.

# Exhibit C

**(Legal Description of the Shops of Richland)**

Being a part of Lot 7 of Richland Marketplace, a subdivision, the map or plat of which is recorded in Plat Cabinet C at Slot 193 and 194 in the Chancery Records of Rankin County at Brandon, Mississippi, and being more particularly described by metes and bounds as follows, to-wit:

Commence at the northwest corner of the said Lot 7 of Richland Marketplace, said northwest corner being the POINT OF BEGINNING for the parcel herein described; thence South 00°26' 50" East for a distance of 195.65 feet along the western line of the said Lot 7 to the southwest corner thereof; thence North 89° 12' 11" East for a distance 419.67 feet along the southern line of the said Lot 7; thence leave said southern line and run North 00° 55' 37" West for a distance of 154.18 feet; thence South 88° 55' 53" West for a distance of 17.94 feet; thence North 17° 45' 20" West for a distance of 31.70 feet to the northern line of the said Lot 7; thence North 81° 12' 44" West for a distance of 55.04 feet along the said northern line; thence South 89° 33' 10" West for a distance of 336.68 feet along the said northern line of Lot 7 to the POINT OF BEGINNING, containing 1.8424 acres, more or less.

"Access" Easement No. 1

A variable width "access" easement situated in Richland Marketplace, a subdivision, the map or plat of which is recorded in Plat Cabinet C at Slot 193 and 194 in the Chancery Records of Rankin County at Brandon, Mississippi, and being more particularly described by metes and bounds as follows, to-wit:

Commence at the northwest corner of Lot 7 of the said Richland Marketplace and run thence North 89° 33' 10" East for a distance of 5.85 feet along the northern line of the said Lot 7 to the POINT OF BEGINNING for the "access" easement herein described; thence leave said northern line and run North 00° 44' 07" East for a distance of 60.10 feet thence run 41.62 feet along the arc of a 26.13 foot radius curve to the left, said arc having a 37.36 foot chord which bears North 44° 53' 47" West; thence South 89° 28' 19" West for a distance of 46.07 feet; thence run 78.48 feet along the arc of a 50.0 foot curve to the right, said arc having a 70.67 foot chord which bears North 45° 33' 39" West; thence North 00° 35' 38" West for a distance of 131.64 feet; thence North 39° 06' 25" West for a distance of 42.0 feet to the southern right of way line of Marketplace Drive; thence South 89° 33' 10" West for a distance of 24.25 feet along the said southern right of way line; thence run 198.01 feet along the arc of a 470.0 foot radius curve to the left along the said southern right of way line, said arc having a 196.55 foot chord which bears South 77° 29' 00" West; thence South 65° 24' 50" West for a distance of 146.39 feet along the said southern right of way line of Marketplace Drive to the eastern right of way line of U. S. Highway No. 49; thence North 24° 46' 06" West for a distance of 60.0 feet along the said eastern right of way line; thence leave said eastern right of way line of U. S. Highway No. 49 and run thence North 65° 24' 50" East for a distance of 146.58 feet along the northern right of way line of the said Marketplace Drive; thence run 223.29 feet along the arc of a 530.0 foot radius curve to the right along the said northern right of way line, said arc having a 221.64 foot chord which bears North 77° 29' 00" East; thence North 89° 33' 10" east for a distance of 75.24 feet along the said northern right of way line of Marketplace Drive and the extension thereof; thence South 00° 35' 38" East for a distance of 224.37 feet; thence run 39.24 feet along the arc of a 25.0 foot radius curve to the left, said arc having a 35.34 foot chord which bears South 45° 33' 39" East; thence North 89° 28' 19" East for a distance of 46.07 feet; thence run 81.44 feet along the arc of a 51.13 foot radius curve to the right, said arc having a

73.10 foot chord which bears South 44° 53' 47" East; thence South 00° 44' 07" West for a distance of 14.55 feet; thence North 89° 33' 10" East for or a distance of 308.54 feet; thence South 81° 12' 44" East for a distance 51.36 feet; thence South 00° 26' 50" East for a distance of 45.59 feet to the said northern line of Lot 7; thence North 81° 12' 44" West for a distance of 55.04 feet along the said northern line of Lot 7; thence South 89° 33' 10" West for a distance of 330.84 feet along the said northern line of Lot 7 to the POINT OF BEGINNING, containing 1.1111 acres (52,222 square feet), more or less.

## "Access" Easement No. 2

A variable width "access" easement situated in Lot 7 of Richland Marketplace, a subdivision, the map or plat of which is recorded in Plat Cabinet C at Slot 193 and 194 in the Chancery Records of Rankin County at Brandon, Mississippi, and being more particularly described by metes and bounds as follows, to-wit:

Commence at the southeast corner of the said Lot 7 of Richland Marketplace and run thence South 89° 12' 11" West for a distance of 232.85 feet along the southern line of the said Lot 7; thence leave said southern line of Lot 7 and run North 00° 55' 37" West for a distance of 154.18 feet; thence South 88° 55' 53" West for a distance of 17.94 feet to the POINT OF BEGINNING for the "access" easement herein described; thence South 89° 33' 10" West for a distance of 44.42 feet; thence North 00°26' 50" West for a distance of 35.96 feet to the northern line of the said Lot 7; thence South 81° 12' 44" East for a distance of 35.45 feet along the said northern line; thence leave said northern line of Lot 7 and run South 17° 45' 20" East for a distance of 31.70 feet to the POINT OF BEGINNING, containing 0.1111 acres, more or less.